# UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

**UNITED STATES OF AMERICA**

v.

**JONATHAN EZEQUIEL BIDEGAIN**

**ELECTRONIC CRIMINAL COMPLAINT**
(Redacted)

CASE NUMBER: MJ-25-04235-PCT-CDB

**SEALED**

I, the undersigned, state under oath that the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about May 25, 2025, in Coconino County, in the District of Arizona, within the confines of Grand Canyon National Park, an area within the special maritime and territorial jurisdiction of the United States, the defendant, JONATHAN EZEQUIEL BIDEGAIN, an adult male, did knowingly, intentionally, and recklessly assault N.R, his spouse and intimate partner, by strangling and attempting to strangle her, in violation of Title 18 United States Code, Sections 7 and 113(a)(8).

## COUNT 2

On or about May 25, 2025, in Coconino County, in the District of Arizona, within the confines of Grand Canyon National Park, an area within the special maritime and territorial jurisdiction of the United States, the defendant, JONATHAN EZEQUIEL BIDEGAIN, an adult male, did knowingly, intentionally, and recklessly assault N.R., his spouse and intimate partner, by striking and wounding her, in violation of Title 18, United States Code, Sections 7 and 113(a)(4), and 3561(b).

I further state that I am a Special Agent of the National Park Service, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

REVIEWED BY: */s AUSA Paul V. Stearns*

**CC:  USM & PTS**

- 2 -

__X__  Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.

Christina Heupel, Special Agent, NPS
Complainant's Name and Title

CHRISTINA HEUPEL
*Digitally signed by CHRISTINA HEUPEL*
*Date: 2025.06.20 10:37:46 -07'00'*

Complainant's Signature                Date

__X__ Sworn by Telephone

6/20/2025
Date/Time

Flagstaff, Arizona
City and State

Camille D. Bibles
*Digitally signed by Camille D. Bibles*
*Date: 2025.06.20 14:29:45 -07'00'*

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED AFFIDAVIT

I, <u>NPS Special Agent Christina Heupel</u>, state under oath as follows:

1. I am a Special Agent (SA) with the National Park Service (NPS), United States Department of the Interior. I am presently assigned to the Southwest Field Office of the Investigative Service Branch (ISB) of the National Park Service. I have been employed by the NPS since 2013 and have worked in the role of Special Agent and as a U.S Park Ranger in Utah, Arizona, and Nevada. I have received training at the Federal Law Enforcement Training Center and completed the Land Management Police Training and the Land Management Investigator Training Program. I have attended numerous training courses in a variety of law enforcement subjects and have conducted criminal investigations into a variety of offenses.

2. The information contained in this affidavit is from my personal knowledge, training, experience, as well as information provided by other law enforcement officers and/or witnesses included those listed herein. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not contain every fact known to your affiant concerning this investigation.

**Background/Introduction**

3. This case involves an assault of a spouse by Jonathan Ezequiel BIDEGAIN (a/k/a Jonatan BIDEGAIN). In summary, on May 25, 2025, BIDEGAIN assaulted his spouse and intimate partner, a 33-year-old female with the initials N.R., by putting his arms around her and squeezing her shoulders to the point of pain, placing both hands on the sides of her face and squeezing to the point of pain, and by strangling her.

4. The assaults occurred at the Bright Angel Point Trail, North Rim, within Grand Canyon National Park, in the District of Arizona, which is an area within the special maritime and territorial jurisdiction of the United States.

**Investigation**

5. On May 25, 2025, Grand Canyon dispatch received a call from K.H., an employee at the North Rim Rangers Rough Rider Saloon. K.H. stated that a woman flagged him down and said she was strangled by her husband. U.S. Park Rangers (USPRs) Zachery Nelson and Aaron Zavesky responded and contacted N.R. N.R. reported that her husband, Jonathan Ezequiel BIDEGAIN, strangled her while they were at Bright Angel Point.

6. When USPRS Nelson and Zavesky arrived on scene at the North Rim Lodge parking area, they observed a black Audi A5 leaving the area. The vehicle matched the description given to Grand Canyon Dispatch of BIDEGAIN's vehicle. The operator of the Audi drove by the marked ranger patrol vehicle in the parking

2

area; he was going the opposite direction. USPRS Nelson and Zavesky observed the Audi's driver accelerate, fail to stop at a stop sign, and then leave the area. When USPR Zavesky exited his vehicle, K.H. approached and told USPR Zavesky that that was the husband. K.H. pointed in the direction in which the Audi had departed.

7. USPRS Nelson and Zavesky transported N.R. to the Ranger Station for medical assessment and to conduct a brief interview. As part of my investigation, I have reviewed the interview of N.R. The following is a summary of that interview:

    a. N.R reported to USPR Zavesky that she and BIDEGAIN had two drinks and dinner at the Rough Rider Saloon. N.R. stated to Grand Canyon Dispatch during a recorded 911 call that BIDEGAIN had smoked marijuana earlier.

    b. After dinner, N.R. said that they decided to go stargazing on Bright Angel Point. N.R. stated she brought up the topic of divorce, and BIDEGAIN became visibly upset. N.R. described that she and BIDEGAIN were sitting side by side, and he wrapped his arms around her shoulders and applied pressure. This caused her pain.

    c. BIDEGAIN asked N.R. something to the effect of, "You are going to leave me?" She said, "Yes." N.R. said BIDEGAIN let go of her. N.R. said that shortly thereafter, BIDEGAIN threw a glass Smirnoff bottle at a rock next to where she was sitting.

   d. N.R. said BIDEGAIN became more "aggressive," so she took out her phone, took some pictures of the stars, and activated the audio record button.1 N.R. said that she kept the phone on record and placed the phone in her backpack.

   e. N.R. said she brought up the topic of divorce again. N.R. reported that BIDEGAIN stood up, got in front of her, leaned forward, and put his face up to her face. N.R. said he used both of his hands to grab both sides of her face and applied pressure, which caused her pain.

   f. N.R. said that BIDEGAIN told her to tell him that she did not want to be with him anymore. N.R. stated she wanted a divorce.

   g. N.R. said that BIDEGAIN then squatted at eye level, grabbed her by the throat with both hands, and applied pressure. N.R. did not recall what BIDEGAIN said to her; however, N.R. stated that she could not breathe and was gagging. When BIDEGAIN loosened his grip, she was able to say something to the effect of, "You strangled me, you strangled me."

   h. N.R. stated she was coughing and short of breath. N.R. reported being shocked and shaking so bad. N.R. reported that on a scale of 1-10, with ten being very strong pressure and one being weak pressure, the pressure applied by

---

1 During an interview on May 29, 2025, I asked N.R. to describe what "aggressive" meant. She stated that in previous fights with BIDEGAIN, he would get angry and throw things, destroy things, and punch objects. N.R. further elaborated that this is why she felt the need to record the incident that occurred on May 25, 2025.

BIDEGAIN was a six or a seven. N.R. said that other than the pressure, she did not recall feeling any pain while he was strangling her but stated she could not breathe at all when he applied pressure to her neck.

      i.      N.R. stated when BIDEGAIN released her throat, N.R. stated she struck him open handed with her right hand. She said BIDEGAIN told her she needed to go and pack up. N.R. stated she felt pain in her neck after he released her throat. She described the level of pain as a three out of ten on a scale where one was weak and ten was very strong.

      j.      N.R. said that she grabbed her yoga mat and backpack. N.R. reported that she normally rolls up her yoga mat and slings her backpack. N.R. said she was so scared that she grabbed the yoga mat and started walking as fast as she could away from BIDEGAIN, dragging the yoga mat behind her up the trail. N.R. said she was in fear of BIDEGAIN, and she wanted to get away from him.

      k.      N.R. stated she started walking quickly up the trail towards the lodge, and BIDEGAIN was behind her. N.R. stated that BIDEGAIN repeatedly asked her to turn on the light on her phone, so they would have light. N.R. stated she did not want to turn on the phone for fear he would see she was recording.

      l.      When she approached the stairs, N.R. said that BIDEGAIN got in front of her. This caused N.R. to have to stop walking, and he said to her something to the effect of, "You know what I could do right here? I could disappear you; I could throw you right here, right now." N.R. reported that she told

5

BIDEGAIN he was scaring her "shitless" and to step aside. N.R. stated she told BIDEGAIN he could do what he wanted, and it was in God's hands. N.R. said BIDEGAIN seemed to calm down and said to her God knew that type of man he was. He said he would not do anything, but she should know that he could.

    m.    N.R. said when BIDEGAIN said he would "disappear her," she was so scared for her life. N.R. reported that she felt BIDEGAIN implied that no one would ever be able to find her.

    n.    N.R. reported that BIDEGAIN turned around and walked up the stairs, and she followed him. When she saw a worker taking out the trash at the Rough Rider Saloon, N.R. said that she went to him and told him to call 911. When the worker asked her why, she stated that BIDEGAIN had strangled her. The worker told her to go inside, and they locked the door and called Grand Canyon Dispatch.

    8.    On May 28, 2025, K.H., a North Rim Aramark employee, provided a statement to USPR Zavesky. K.H. stated he was taking out the trash when N.R. came running towards him, crying, and asked him to call 911. K.H. reported that the woman (N.R.) said her husband choked her after they got in a fight. K.H. stated BIDEGAIN was behind N.R. K.H. stated he rushed her into the saloon's back door and locked it. As he locked the door, he heard BIDEGAIN say something to the effect of, "Come on, bro, don't do this." K.H. called 911. He stated they had to move N.R. to a backroom after her husband pulled up in an Audi and parked in front of the lodge. K.H. stated BIDEGAIN did not exit the vehicle but stayed there for over

6

an hour until the rangers arrived.   K.H. said BIDEGAIN drove off when the rangers arrived.

9. On May 29, 2025, N.R. reported to me (Christina Heupel) that BIDEGAIN was repeatedly calling her phone from his cell phone, and that he was texting her on WhatsApp. While she was at the Rough Rider Saloon, N.R. stated BIDEGAIN sent messages to her telling her not make drama and let's just go home. N.R. reported to SA Heupel that BIDEGAIN apologized to N.R. via WhatsApp.

10. On May 26, 2025, N.R. provided USPR Nelson the audio recording of the incident and pictures she had taken.

11. On May 26, 2025, at approximately 0300 hours, N.R. was evaluated for injuries by a Grand Canyon paramedic.   USPR Zavesky took photos of N.R., and he observed that N.R.'s neck was discolored around her throat below her chin.   The skin appeared discolored.   Additionally, N.R. had reddened veins in her eyes from the sclera to the iris in both eyes. N.R requested to go to Flagstaff for a medical evaluation with a chief complaint of strangulation. USPR Nelson and a victim advocate transported N.R. to Flagstaff, AZ, to Northern Arizona Care and Services After Assault (NACASA) for evaluation. A medical evaluation for injuries was performed at NACASA, and a report was completed by medical staff. The report

indicated N.R. stated to evaluators her chief complaint was that she was strangled by her husband.2

12.  On May 26, 2025, at approximately 0520 hours, USPR Zavesky located the scene of the initial incident on the Bright Angel Point trail. USPR Zavesky observed a shattered bottle of Smirnoff Ice and recorded the incident scene on body warn camera. The scene was able to be located based on what N.R. described in her statements and indicated on a map to USPR Zavesky.

13.  On May 26, 2025, USPR Zavesky contacted BIDEGAIN to return his wallet. During that contact, USPR conducted a short interview of BIDEGAIN.  In summary, BIDEGAIN stated as follows:

  a.  BIDEGAIN initially stated to USPR Zavesky, "I don't know why she said I was strangling her; that is why she ran over to the guys over there [Rough Rider Saloon]."  BIDEGAIN stated he would tell USPR Zavesky what happened.

  b.  BIDEGAIN told USPR Zavesky that they had a couple of drinks and started arguing about their marriage.  BIDEGAIN said N.R. wanted to go back to Mexico and did not want to be with him anymore. BIDEGAIN stated he grabbed N.R. by the shoulders.

  c.  BIDEGAIN demonstrated with both hands and moved his arms backwards and forwards in a shaking motion.  BIDEGAIN stated he said to N.R.,

---

2 On May 29, 2025, I personally noted slight discoloration in N.R.'s neck area near the center of her neck and on the underside of her chin.

8

"Are you kidding me? Tell me like this, is like for real?" BIDEGAIN said he "kind a put pressure" on N.R. while grabbing her shoulders. BIDEGAIN said he was not going to do anything to N.R. BIDEGAIN said he told her something to the effect of, "Look right now, God is watching us, nothing is going to happen."

      d.    USPR Zavesky asked BIDEGAIN why he said he did not strangle his wife. BIDEGAIN stated he overheard N.R. saying to the saloon employee, "Oh my God, help, he tried to strangle me." BIDEGAIN stated he did not strangle N.R.

      e.    USPR Zavesky stated BIDEGAIN put both of his arms out in front of him shoulder width apart, placed his hands in a c-clamp-like grip, and stated, "I was just going like that to her." BIDEGAIN began rocking his arms backward and forward in a shaking motion, demonstrating how he grabbed N.R. BIDEGAIN told Zavesky that strangling was something more. BIDEGAIN physically demonstrated for USPR Zavesky by bringing both his hands together, wrapping them around his phone while his arms were out in front of him, and started shaking his arms backward and forward motion. BIDEGAIN stated that it did not happen.

      f.    I reviewed the body-worn camera footage of the interaction between Zavesky and BIDEGAIN. I observed that when BIDEGAIN was demonstrating the strangulation, he angled his hands around the phone in a downward direction as if someone's neck was located lower at the level of his thighs

9

above his knees rather than straight out where a person's neck would be located if they were standing.

    14.    On May 31, 2025, I called BIDEGAIN in an attempt to schedule an interview. During the phone call, absent any questions from me, BIDEGAIN stated that N.R. "over freaked" herself the night of the incident. BIDEGAIN said he was still communicating with N.R. via text messages. BIDEGAIN said that N.R. told him she did not feel safe around him and was still scared. BIDEGAIN said he felt N.R. overreacted that night, and that they could have just walked and slept it out. BIDEGAIN said they were messaging each other. BIDEGAIN said he told her he was sorry, and it should not have happened. BIDEGAIN said she was also saying she was sorry. BIDEGAIN said he did not punch N.R. or threaten her. BIDEGAIN said he told N.R. he was not going to do something, but she interpreted it as he was going to do it. BIDEGAIN said he cannot change her perception or interpretation of his words. BIDEGAIN said N.R. misunderstood when he said, "We are here, and nothing will happen." He said, "I am not going to kill you, I am not going to throw you." BIDEGAIN said it was probably not the time or place to have made those statements, and she got "freaked out." BIDEGAIN stated, "I didn't bruise, punch, or threaten her life; it's in her head; she is saying things that are not true."

    15.    On June 11, 2025, N.R. provided me with text messages between her and BIDEGAIN. N.R. uploaded a video of the messages using the community

10

evidence upload invite to Evidence.com. The following is a summary of several text conversations between them:

    a.    On May 25, 2025, at 2352 hours, BIDEGAIN sent several texts to N.R.'s phone after she was escorted inside the Saloon. In the text messages, he told her to come out. N.R. texted, "You strangled me, and I feared for my life. No." BIDEGAIN texted N.R. that he did not; he just held her tight and was sorry.

    b.    On May 26, 2025, at 1035 hours, BIDEGAIN texted N.R. in Spanish. He stated that he wished N.R. could understand that he grabbed her incorrectly, and if he used his hands forcefully, he let go immediately, and it was not his intention for that to happen. BIDEGAIN stated he wanted to grab her by the shoulders to make her react and comprehend everything that was going on. BIDEGAIN stated he should not have done that.

    c.    On May 29, 2025, at 0848 hours, N.R. texted BIDEGAIN saying he had choked her and said things to her. BIDEGAIN stated he did not know how to respond, but he was sure he knew himself, and he was not a killer. He said he said stupid things in a bad moment. He said he let go right away, and she knew that, and he did not know why he began to shake her like he did.

## Conclusion

16.    Based on the foregoing, your affiant submits that there is probable cause to support that the defendant, JONATHAN BIDEGAIN, has violated federal law. *See* 18 U.S.C. § 113(a)(8) and 18 U.S.C. § 113(a)(4).

17. An arrest warrant for JONATHAN EZEQUIEL BIDEGAIN is respectfully requested.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: June  20 , 2025

CHRISTINA HEUPEL
Digitally signed by CHRISTINA HEUPEL
Date: 2025.06.20 10:40:51 -07'00'

Christina Heupel, Special Agent, NPS

 X  Sworn by Telephone

Date/Time: _____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.06.20 14:29:17 -07'00'

Camille D. Bibles
United States Magistrate Judge

12